UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

:

JOSEPH FIERRO,                                                    :

                                                                 :

                                            Plaintiff,           :                    1:20-cv-09966-GHW

                                                                 :

                    -against-                                    :                    MEMORANDUM ORDER

                                                                 :                        AND OPINION

THE CITY OF NEW YORK, DEPARTMENT OF                              :

EDUCATION, and TASHA FERGUSON,                                  :

                                                                 :

                                            Defendants.          :

                                                                 :

----------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/10/2021

## I.   INTRODUCTION

Plaintiff Joseph Fierro, a teacher employed by the New York City Department of Education (the "DOE"), alleges that the DOE retaliated against him because he reported school safety issues to his school's principal and because he sued the DOE in 2012 alleging age and disability discrimination.  Plaintiff also asserts that he was sexually harassed by various school employees.

Plaintiff brings claims for retaliation for exercising his rights under the First Amendment and Fourteenth Amendment, claims for gender discrimination under the Fourteenth Amendment, and analogous claims under New York State and New York City Human Rights law.  Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because Plaintiff's complaints regarding school safety were made within the scope of his duties as a public employee, his First Amendment retaliation claim is dismissed.  His Fourteenth Amendment retaliation claim, however, may proceed.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background[1]

#### 1.   *Plaintiff Complains of "Misconduct" in Special Education District 75 (2005-2008)*

Plaintiff Joseph Fierro has worked for the New York City Department of Education since approximately September 2000.  FAC ¶ 8.  He has held several roles within DOE, including work as a teacher, dean, special education supervisor, and lead assistant principal.  *Id.*

From September 30, 2005, until December 2005, Plaintiff was an assistant principal at P753K, a school in Special Education District 75.  *Id.* ¶ 11.  The principal of P753K at that time was Ketler Louissaint.  *Id.*  During his time as an assistant principal, Plaintiff observed "numerous incidents of physical and verbal abuse of the students at the school [and] . . . received several reports of abuse from students and other staff members."  *Id.* ¶ 12.  Plaintiff alleges that he "regularly reported these acts of child abuse and endangerment to Louissaint."  *Id.* ¶ 13.  Plaintiff also raised "a number of school safety issues he observed," including "acts of student on student violence and the release of underage students from school" to Mr. Louissaint.  *Id.* ¶ 14.  In response, Mr. Louissaint told [Plaintiff] "not to take any further action," "that he would never hire [Plaintiff] as a supervisor[,] and that as long as he ha[d] power, he would ensure that Fierro never worked as a supervisor in the DOE."  *Id.* ¶ 13.

"On or about December 14, 2005," Plaintiff was "removed from his Assistant Principal position at P753K."  *Id.* ¶ 15.  Plaintiff was "placed in an isolated administrative office within District 75 with no substantive duties."  *Id.*  Around December 2005, Plaintiff filed a complaint with DOE's Special Commission of Investigation regarding the "misconduct" he had experienced at

---

[1] The following facts are drawn from the amended complaint.  Dkt. No. 7 ("FAC").  The Court "accept[s] all facts alleged in the [amended] complaint as true and draw[s] all reasonable inferences in the plaintiff's favor."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).

P753K.  *Id.* ¶ 16.  Plaintiff alleges that the Special Commissioner refused to follow up on his complaints and "threatened him with arrest if he did not leave with the evidence he provided."  *Id.*

Plaintiff avers that around January 2006 District 75 Superintendent Susan Erber and Deputy Superintendent Bonnie Brown told him that he was "'damaged goods' and that they did not know what to do with him because of his reports of corruption and wrongdoing."  *Id.*  Plaintiff alleges that, as a result of his complaints regarding "corruption and wrongdoing within District 75," he was demoted and discontinued as an assistant principal.  *Id.* ¶ 17–18.  Two months later, after "being forced to sit in the reassignment room with no substantive work," Fierro took a medical leave of absence "due to the stress and anxiety the DOE's actions caused him."  *Id.* ¶ 19.  Fierro was then hired as a special education teacher at P.S. 14 for the 2006-2007 school year.  *Id.* ¶ 20.

As a result of the "unlawful demotion and discontinuance as Assistant Principal," Plaintiff commenced several lawsuits in federal court against the DOE in 2007 and 2008.  *Id.* ¶ 21.  Those matters were resolved through settlement in or around May 2010.

### 2.  *Plaintiff Receives Negative Letters and Files More Lawsuits (2010-2012)*

In 2010, Fierro met with a co-principal at P.S. 14 who told him that "she knew who he was, she had heard he has settled a case against the DOE and that he would not be able to move past the case because she would be 'dealing' with him soon."  *Id.* ¶ 24.  The co-principal then placed two "baseless negative letter[s]" in Fierro's personnel file.  *Id.* ¶¶ 25–26.  Plaintiff complained to the other P.S. 14 principal, who refused to remove the letters.  *Id.* ¶ 27.  During the 2011-2012 school year, Plaintiff requested to be reappointed as assistant principal at the school.  *Id.* ¶ 31.  He was not given the appointment despite the support of his then-principal.  *Id.*

On or about August 21, 2011, Plaintiff filed a complaint alleging age and disability discrimination with the New York State Division of Human Rights and the U.S. Equal Employment

Opportunity Commission. *Id.* ¶ 29.  He then filed an action in federal court. *Id.* ¶ 32.  That matter was also resolved through settlement. *Id.*

### 3.   *Plaintiff Complains of Harassment at P.S. 14 (2018-2019)*

Since 2006, Plaintiff has been a teacher at New York City Public School 14 ("P.S. 14"). *Id.* ¶ 34.  Plaintiff alleges that, during the 2018-2019 school year, he received complaints from parents about two paraprofessionals in his class, "Gianni" and "Nelson," who were "hugging children and watching videos on the computer when they were supposed to be working." *Id.* ¶ 35. He brought these complaints to P.S. 14's principal, Ira Schulman, but Mr. Schulman "took no action against the paraprofessionals." *Id.*

In or around May 2018, Fierro asked Nelson a question regarding a student who was upset. Nelson "became irate, raised her voice, approached Fierro's desk [and] stuck out her rear end towards Fierro's face, began slapping her rear and told Fierro repeatedly, 'no one tells this big butt what to do.'" *Id.* ¶ 36.  Fierro complained to Mr. Schulman, but Mr. Schulman did not take any disciplinary action against Nelson. *Id.* ¶ 36.

Plaintiff also claims that, in May 2018, individual defendant Tasha Ferguson "began to order Fierro to move his car because it was blocking hers." *Id.* ¶ 37.  When Fierro told her that "he was busy and could not move his car at the moment," she allegedly "wrapped her arms and breasts around [Plaintiff]'s head, making it difficult for him to breathe." *Id.*  Fierro complained to Mr. Schulman, but Mr. Schulman again "did not take any action against Ferguson." *Id.*

 The same month, Ms. Ferguson left Mr. Fierro a voicemail saying, "I'm going to f*** you up." *Id.*  Then, in another instance, she grabbed Plaintiff by his sweater and almost ripped it, and "demanded that he move his car." *Id.* ¶ 39.  Plaintiff complained about both of the incidents to Mr. Schulman. *Id.* ¶¶ 38–39.  However, Plaintiff believes that Mr. Schulman did not discipline Ms. Ferguson. *Id.*

4

In addition, around June 2018, Ms. Ferguson stood in Plaintiff's doorway and "gyrated her hips in a provocative manner and then gave [Plaintiff] the middle finger." *Id.* ¶¶ 37–40. Ms. Ferguson also repeatedly "twerked" in front of Plaintiff in the teacher's lounge. *Id.* ¶ 41. Mr. Schulman still "refused to discipline Ferguson, and instead told Fierro that he told her to stay away from his classroom." *Id.* ¶ 42.

According to Plaintiff, Ms. Ferguson "continued to taunt and harass [him]," and would also "bump into him" in the hallway, "throughout the 2018–2019 school year." *Id.* ¶ 45. On or about March 19, 2019, Fierro "went to complain about Ferguson's continued harassment to Schulman." *Id.* ¶ 46. "Rather than process Fierro's complaint, Schulman refused, saying that if [Plaintiff] ma[de] a complaint, Ferguson [would] file her own complaint in retaliation and Fierro [would] never be promoted." *Id.* ¶ 47.

Plaintiff also alleges that two other paraprofessionals in his class, "Gianni" and "Yazmin," attempted to lock him in a broom closet "in retaliation for his complaints about Ms. Ferguson." *Id.* ¶ 43. When he complained to Mr. Schulman about that behavior, Mr. Schulman took no action. *Id.* ¶ 43. Plaintiff also complained to the United Federation of Teachers chapter leader about the paraprofessional's conduct, and the chapter leader told him that "the paraprofessionals have concerns regarding [Plaintiff]" and "words to the effect of 'it is 2019 and men have very little rights.'" *Id.* ¶ 44. Plaintiff's amended complaint repeatedly asserts that "similarly situated female teachers are not treated in such a manner." *See e.g.*, *id.* ¶¶ 36–38, 44.

### 4. *Plaintiff Is Not Promoted (2018-2019)*

Plaintiff alleges that he has applied for hundreds of assistant principal and principal positions, yet has only been given interviews for a small percentage of them and was not selected for any of them. *Id.* ¶¶ 49-56. Specifically, in 2018, Plaintiff applied for 341 assistant principal positions, but did not receive any of those positions and the "DOE refused to even interview him

for over 300 of these positions." *Id.* ¶ 49.  In 2018, he also applied for 94 principal positions, "yet

was given interviews for only 37 of them, and was not selected for any other principal positions."

*Id.* ¶ 50.  In 2019, Plaintiff applied for approximately 110 assistant principal positions, but "the DOE

refused to interview him for over 100 of these positions." *Id.* ¶ 54.  That year, he also "applied for

approximately 112 Principal positions, yet the DOE refused to interview Fierro for almost 70 of the

open positions." *Id.* ¶ 55.

Plaintiff alleges that, during those interviews, his experience at PDX75 was discussed.  For

instance, during one interview around February 2018, "Fierro explained what had occurred between

him and Louissaint." *Id.* ¶ 51.  The interviewer allegedly left the room.  *Id.*  When the interviewer

returned, he told Plaintiff that he had just spoken with Mr. Louissaint, that he was not sure how

Plaintiff was even given an interview, and that Plaintiff "should not expect to receive any interviews

for positions within District 75 in the future."  *Id.*

In winter 2018, Plaintiff appeared for an interview for a position as a school principal.  *Id.* ¶

51.  When he appeared, a school representative told him that the interviews had been completed.  *Id.*

When Plaintiff complained, the representative told him "with your history at district 75, did you

expect that you would receive this position anyway?"  *Id.*  And when Plaintiff interviewed for an

assistant principal position within District 75 around December 2018, one of the interviewers told

Plaintiff that "given what occurred between [Plaintiff] and Louissaint, [Plaintiff] must have been

granted the interview in error." *Id.* ¶ 52.  Around November 2019, Plaintiff also alleges that another

interview for a principal position was cancelled "abruptly and without explanation." *Id.* ¶ 56

### B.  Procedural History

Plaintiff filed the initial complaint in this matter on November 24, 2020, Dkt. No. 1, and

then filed an amended complaint on December 18, 2020.  Dkt Nos. 7.  The amended complaint

alleges causes of action against the DOE for First Amendment retaliation, Fourteenth Amendment

retaliation, sex-based discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, and analogous causes of action under the New York State and New York City Human Rights Law. *Id.* ¶¶ 57–79. The amended complaint also alleges that Defendant Ferguson discriminated against Plaintiff under federal and state law, and also brings claims against Ms. Ferguson for aiding and abetting conduct in violation of the New York State and City Human Rights Law. *Id.* ¶¶ 70–71, 78–79.

On May 12, 2021, Plaintiff stipulated to withdraw his Title VII claim. Dkt. No. 23. On May 17, 2021, Defendants moved to dismiss for failure to state a claim all of Plaintiff's claims except the sexual harassment and hostile work environment claims against Ms. Ferguson. Dkt. No. 27 ("Mem.") at 2 n.3. Plaintiff filed his opposition to Defendants' motion to dismiss on June 7, 2021, Dkt. No. 28 (the "Opposition"), and Defendants filed their reply on June 14, 2021, Dkt. No. 30 (the "Reply").

## III.   LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

7

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999)). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d] on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint" (quotation and brackets omitted)). A plaintiff must "rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231 (emphasis added) (*quoting Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

## IV.   DISCUSSION

### A.  Because Plaintiff's Speech Was Made Pursuant to his Official Duties, He Does Not Sufficiently Plead a Claim for First Amendment Retaliation

Plaintiff does not adequately plead a claim for First Amendment retaliation. To state a claim for First Amendment retaliation, a plaintiff must plausibly allege that "(1) his speech or conduct was

protected by the First Amendment; (2) the defendant took an adverse action against his; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citation omitted). "Speech by a public employee is protected by the First Amendment only when the employee is speaking 'as a citizen . . . on a matter of public concern.'" *Ross v. Breslin,* 693 F.3d 300, 305 (2d Cir. 2012) (quoting *Piscottano v. Murphy,* 511 F.3d 247, 269–70 (2d Cir. 2007)). Accordingly, "public employees cannot state a claim for First Amendment retaliation unless (among other requirements) they speak as citizens on matters of public importance." *Castine v. Zurlo*, 756 F.3d 171, 17b n.5 (2d Cir. 2014) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcetti*, 547 U.S. at 421. "This is the case even when the subject of an employee's speech is a matter of public concern." *Looney v. Black*, 702 F.3d 701, 710 (2d Cir.2012) (quoting *Ross*, 693 F.3d at 305). A public employee's speech "can properly be said to have been made pursuant to . . . official duties" where "the speech . . . 'owes its existence to a public employee's professional responsibilities,' or where the speech is 'part-and-parcel of [the employee's] concerns' about [the employee's] ability to 'properly execute his duties.'" *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010) (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d at 689, 694 (5th Cir. 2007)).

"The proper inquiry" into whether a public employee's speech was pursuant to official duties "is a practical one." *Garcetti*, 547 U.S. at 424. "Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." *Ross*, 693 F.3d at 306. "Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." *Id.*

"Since 'determinations of whether a public employee spoke pursuant to her official duties can be very fact-specific' those determinations often cannot be made upon a motion to dismiss." *Anglisano v. New York City Dep't of Educ.*, No. 14-CV-3677 SLT SMG, 2015 WL 5821786, at *6 (E.D.N.Y. Sept. 30, 2015) (quoting *Ross*, 935 F, Supp.2d at 517).  However, in some cases, "the parameters of the employee's official duties are so well established and the allegations in the complaint are so specific as to permit such a determination to be made upon a motion to dismiss." *Id.*

"[I]t is beyond dispute that a teacher is responsible for protecting his or her own students and preventing inappropriate activity in his or her own classroom."  *Id; see also Felton v. Katonah Lewisboro Sch. Dist.,* No. 08 CIV. 9340, 2009 WL 2223853, at *5 (S.D.N.Y. July 27, 2009) (commenting that the duties of a teacher are "ensuring that a classroom is well supplied, safe, and conducive to learning and that the curriculum is substantively appropriate"); *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d Cir. 2008) (summary order) (commenting that the "official duties" of a special education teacher included "monitoring her students' behavior, needs, and progress").  School administrations similarly have a duty to protect their students.  *Verdi v. City of New York*, 306 F. Supp. 3d 532, 548 (S.D.N.Y. 2018) (describing an assistant vice principal's duties included "protect[ing] his students' and his putative students' rights").  "Accordingly, district courts have granted motions to dismiss First Amendment retaliation claims brought by teachers and other school employees who allege retaliation for statements made to supervisors regarding classroom and school safety."  *Anglisano*, 2015 WL 5821786, at *6 (collecting cases).

In his opposition, Plaintiff asserts that his First Amendment claim is premised on the fact that he "complained to Louissaint about the physical and verbal abuse of students."  Opp'n at 3; *see* FAC ¶ 13 (alleging that Plaintiff reported "acts of child abuse and endangerment" to Mr. Louissaint).  Those reports fall squarely within his duty as an assistant principal to protect his

students.  *See Verdi*, 306 F. Supp. 3d at 547–48 (finding an assistant principal's reports of issues related to student safety were made within the scope of his official duties, and thus were not protected by the First Amendment); *Woodlock*, 281 F. App'x at 68 (concluding that speech was not protected by the First Amendment where a special education counselor's "communications regarding . . . the lack of physical education and art classes" at a school, "were made pursuant to her 'official duties' as a special education counselor, in which capacity she was responsible for monitoring her students' behavior, needs, and progress"); *Medina v. Dep't of Educ. of City of N.Y.,* No. 10 Civ. 1180(BSJ), 2011 WL 280800, at *1, 3 (S.D.N.Y. Jan.14, 2011) (granting motion to dismiss a First Amendment retaliation claim by a guidance counselor who alleged that he was terminated for raising "public health and safety issues" with the school principal, his union representatives and parents of the students).  Accordingly, Plaintiff's reports are not protected by the First Amendment.

Notably, neither party raises arguments regarding Plaintiff's status as a public employee and whether his statements were made within the scope of his official duty.  However, a district court has inherent authority to dismiss causes of action that "lack[ ] an arguable basis either in law or in fact."  *Combier v. Portelos*, 17-CV-2239, 2018 WL 4678577, at *7 (E.D.N.Y. Sept. 29, 2018), *aff'd*, 788 F. App'x 774 (2d Cir. 2019) (internal citations omitted) (dismissing counterclaims as frivolous).  Here, Plaintiff's allegations leave no doubt that his reports regarding student safety fell within the scope of his official duties, and thus, are not protected by the First Amendment.  Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is granted.

### B.  Plaintiff Sufficiently Pleads a Claim for Fourteenth Amendment Retaliation

1.  *Plaintiff May State a Claim for Fourteenth Amendment Retaliation Based on his Prior Lawsuits Alleging Age and Disability Discrimination*

Plaintiff sufficiently pleads a claim for retaliation under the Fourteenth Amendment's Equal Protection Clause.  As an initial matter, Plaintiff asserts that the basis for his Fourteenth Amendment relation claims are "his prior lawsuits and complaints."  Opp'n at 7.  To the extent that

those claims are based on his prior complaints to Mr. Louissaint regarding student safety issues,[2] courts in this Circuit routinely hold that equal protection claims premised on the same allegations as a First Amendment claim cannot proceed where that First Amendment claim has been dismissed. *See, e.g.*, *Bryant v. Capra*, No. 18-CV-10198 (KMK), 2020 WL 508843, at *8 (S.D.N.Y. Jan. 31, 2020) ("Plaintiff's Equal Protection Claim is 'subject to dismissal, because it is both derivative and duplicative of [P]laintiff's claim that [D]efendants violated his First Amendment right to freely exercise his [lack of] religion.'") (quoting *Barnes v. Fidele*, 760 F. Supp. 2d 296, 302 (W.D.N.Y. 2011); *Whitehead v. City of New York*, 953 F. Supp. 2d 367, 377 (E.D.N.Y. 2012) (denying motion to dismiss where the plaintiff was "attempting to assert an equal protection claim based upon retaliation for First Amendment activity" because the "claim is completely duplicative of the First Amendment retaliation claim," which had "already been dismissed."); *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 518 (E.D.N.Y. 2011) (same). Thus, because Plaintiff's First Amendment claim has already been dismissed, Plaintiff may not state a Fourteenth Amendment claim premised on his complaints regarding student safety.

Under binding Second Circuit precedent, however, the Court must conclude that Plaintiff's previous lawsuits bringing claims for age and disability discrimination are appropriate bases for Plaintiff's Fourteenth Amendment retaliation claims. In *Vega v. Hempstead Union Free School District*, the Second Circuit held that "retaliation claims alleging an adverse action because of a complaint of discrimination [in violation of the Equal Protection Clause] are actionable under § 1983." 801 F.3d 72, 80 (2d Cir. 2015). *Vega* then determined that "[t]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Id.* at 91. "[F]or a retaliation

---

[2] Plaintiff alleges that he brought lawsuits in 2007 and 2008 "as a result of the unlawful demotion and discontinuance as Assistant Principal." FAC ¶ 21. But those lawsuits do not constitute grounds for Fourteenth Amendment retaliation. Plaintiff does not assert that he complained of discrimination in those lawsuits; indeed, the only conduct that Plaintiff identifies as the basis for those lawsuits are his complaints regarding student safety issues—the same conduct underlying his First Amendment Claims.

claim under § 1983 to survive . . . a motion to dismiss," *Vega* directs, "the plaintiff must plausibly allege that:  (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination."  *Id.*; *see also Gonzalez v. City of New York,* 377 F. Supp. 3d 273, 290 (S.D.N.Y. 2019*)* ("To establish a prima facie case of unlawful retaliation under § 1983, "an employee must show that (1) he [or she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.").[3]

> 2. <u>Under Second Circuit Precedent, the Court Must Conclude that Plaintiff's Prior Lawsuits Constitute Protected Activity</u>

Plaintiff sufficiently pleads that his prior lawsuits alleging age and disability discrimination constitute protected activity.  In the Title VII retaliation context, "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination," *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded by statute on other grounds by* N.Y.C. Local L. No. 85,— in other words, action taken to oppose discrimination that is prohibited by Title VII.  As follows, because Fourteenth Amendment retaliation claims mirror those under Title VII, a plaintiff alleging Fourteenth Amendment retaliation must show that they complained of discrimination that is prohibited under the Equal Protection Clause.

However, the types of discrimination prohibited by Title VII differ from those prohibited by the Equal Protection Clause.  Specifically, Title VII prohibits discrete categories of discrimination— specifically, discrimination "because of such individual's race, color, religion, sex, or national origin."

---

[3] *Vega* does not expressly state that the elements of a retaliation claim include a plaintiff's "participation in a protected activity."  However, given that *Vega* holds that the elements of retaliation claims under § 1983 "mirror" those under Title VII, the Court assumes that plaintiffs are required to allege participation in a protected activity as they would be in a Title VII claim.  *See Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (plaintiffs asserting Title VII claims must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action").

42 U.S.C. § 2000e–2(a)(1); *see also Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1737–38 (2020) (reiterating that Title VII protects against those types of discrimination).  The Fourteenth Amendment, by contrast, offers some level of protection against *all* discrimination, stating that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  Of course, the Fourteenth Amendment offers stronger protections where governmental action discriminates against individuals on the basis of their membership in "suspect" and "quasi-suspect" classes including race, alienage, national origin, and gender.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985); *see also Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009) ("Under the Equal Protection Clause, certain 'suspect' classifications are subject to strict judicial scrutiny" such as "classifications based on race"); *Myers v. Cty. of Orange*, 157 F.3d 66, 75 (2d Cir. 1998) (noting that "suspect or quasi-suspect classification" include "race, sex, alienage, or national origin.").  But if an individual is not a member of a suspect or quasi-suspect class, they are still afforded limited protection—there, state action that is alleged to be discriminatory is "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne*, 473 U.S. at 440; *Price v. Koenigsmann,* No. 19-CV-4068 (KMK), 2022 WL 125818, at *7 (S.D.N.Y. Jan. 13, 2022) (quoting *City of Cleburne* for the same).

Importantly, neither age nor disability are suspect or quasi-suspect classes under the Equal Protection Clause.  *Shein v. N.Y.C. Dep't of Educ.*, No. 15-CV-4236, 2016 WL 676458, at *6 (S.D.N.Y. Feb. 16, 2016) ("Age is not a protected class under the Fourteenth Amendment's Equal Protection Clause."); *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 431 (S.D.N.Y. 2017) (same); *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 922 (D.C. Cir. 2013) ("Because age is not a suspect or protected class, it is entitled only to rational basis review."); *City of Cleburne*, 473 U.S. at 444 (mental disability is not a suspect class); *Dare v. California*, 191 F.3d 1167, 1174 (9th Cir. 1999) (same).  Thus, had

Plaintiff alleged Fourteenth Amendment *discrimination* on the basis of age or disability, he would be afforded the lowest levels of protection available under the Equal Protection Clause. *See City of Cleburne*, 473 U.S. at 440.

But here, Plaintiff brings claims of Fourteenth Amendment *retaliation*, and thus, the Court is bound by the standard set forth by *Vega*: the Court must determine whether Plaintiff "complained of or otherwise opposed *discrimination*" prohibited by the Fourteenth Amendment. *Vega*, 801 F.3d at 91. And because the Equal Protection Clause, at some level, prohibits *all* discrimination, the Court is left to conclude that complaints of *any* discrimination can form the basis for a Fourteenth Amendment retaliation claim—even discrimination that is afforded only the most minimal amounts of protection under the Equal Protection Clause. And Plaintiff's lawsuits alleging age and disability fall under that exceptionally broad umbrella.

The Court notes that the Second Circuit is an outlier in recognizing Fourteenth Amendment retaliation claims based on discrimination in violation of the Equal Protections Clause. At least seven circuits have "held that the Equal Protection Clause cannot sustain a pure claim of retaliation." *Wilcox v. Lyons*, 970 F.3d 452, 461–62 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2754, 210 L. Ed. 2d 904 (2021) (collecting cases from six circuits that have held accordingly before joining those circuits to hold that a retaliation claim cannot be premised on violations of the Equal Protections Clause). And, in the years since the Second Circuit issued *Vega*, the Second Circuit appears to have questioned whether courts, including *Vega*, can reasonably adopt Title VII's standard in the context of § 1983 claims. *Naumovski v. Norris*, 934 F.3d 200, 214 n.38 (2d Cir. 2019) (citing *Vega* and noting that "[s]everal of our previous cases have elided th[e] distinction between § 1983 and Title VII analyses. . . . we may no longer gloss over the issue"). Moreover, given that *Vega* concerned complaints of discrimination on the basis of ethnicity—a suspect class, *see Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) ("Hispanics as an ethnic group do constitute a suspect class for the

purpose of equal protection analysis . . . .")—it could be the case that *Vega* intended to permit retaliation claims based on the Equal Protection Clause to be actionable only in cases where a plaintiff reported discrimination due to their membership in a suspect or quasi-suspect class to support claims for Equal Protection retaliation. But if so, *Vega* did not say as much. Instead, *Vega* permitted claims based on any "discrimination," without expressly limiting the claim to categories of protected classifications under the Equal Protection Clause.

As written, Second Circuit law requires only that a plaintiff complain of "discrimination." Because the Court is bound to that standard, Plaintiff's lawsuits alleging age and disability discrimination constitute protected activity for purposes of his Fourteenth Amendment retaliation claim.

### 3. *Plaintiff Alleges Adverse Employment Action*

Plaintiff pleads that he was subject to an adverse action. Actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Plaintiff alleges that he was repeatedly denied promotions to positions as an assistant principal and principal. *See* FAC ¶¶ 48–56. Those actions are sufficiently adverse to satisfy the adverse employment action requirement. *Isaac v. City of New York*, 701 F. Supp. 2d 477, 492 (S.D.N.Y. 2010) ("The failure to promote an employee may amount to an adverse employment action.").

### 4. *Statements Made by Plaintiff's Interviewers Are A Sufficient Basis to Satisfy the Causal Connection Requirement*

Plaintiff also sufficiently pleads a causal connection between his prior lawsuits alleging discrimination and his denial of promotions in 2019. "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d

Cir. 2015) (citation omitted)).  During interviews for a principal position in 2018, one interviewer told Fierro, "with your history at District 75, did you expect that you would receive this position anyway?"  FAC ¶ 52.  In his prior lawsuits—filed while Plaintiff worked at District 75—Plaintiff expressly alleged that he had suffered age and disability discrimination during his tenure at District 75.  *See Fierro v. City of New York et al.*, No. 12-cv-3182, Dkt. No. 1 (the "2012 Complaint") ¶¶ 18, 35, 42.  At this early stage of the litigation, when we must draw all inferences in Plaintiff's favor, it is plausible that the interviewer's reference to Plaintiff's "history at District 75" refers to the lawsuits alleging age and disability discrimination that Plaintiff filed while working at District 75.  *Rose v. N.Y. City Bd. of Ed.*, 257 F.3d 156, 158, 162 (2d Cir. 2001) (employer's comments to plaintiff that he would replace her with someone "younger and cheaper" if she did not follow his instructions were evidence of retaliatory animus); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383-84 (2d Cir.2003) (finding direct evidence of retaliatory animus in failure to promote where superiors told the employee that he should learn to "keep his mouth shut" and that "baggage" from his testimony about anti-Semitism in the police department could adversely affect his career there).[4]

Defendants argue that the events in 2012 are too temporally removed from their decision not to promote Plaintiff in 2018 and 2019 to plead causality.  However, "[a] plaintiff may establish causation either *directly through a showing of retaliatory animus*, or indirectly through a showing that the protected activity was followed closely by the adverse action."  *Smith*, 776 F.3d at 118 (emphasis added).  Here, regardless of the length of time between Plaintiff's lawsuit alleging age and disability

---

[4] Plaintiff also alleges that, after one of his interviewers spoke with Louissaint, the interviewer "was not sure how Fierro was even given an interview" and another interviewer said, "given what occurred between Fierro and Louissaint, he had been granted the interview in error."  *Id.* ¶¶ 52–53.  Those references to Mr. Louissaint do not sufficiently demonstrate that his interviewers knew of his previous lawsuit alleging and disability discrimination, let alone that they harbored any retaliatory animus.  In both this case and his 2012 lawsuit, Plaintiff alleged that Mr. Louissaint failed to respond to Plaintiff's complaints regarding student safety.  *See* 2012 Complaint ¶¶ 21–23; FAC ¶¶ 11–14.  Thus, as alleged, references to Mr. Louissaint more reasonably refer to Plaintiff's complaints regarding Mr. Louissaint's failure to respond to his complaints of student safety—they do not evidence retaliatory animus related to Plaintiff's lawsuits complaining of age and disability discrimination.

discrimination and the denial of promotions in 2018 and 2019, the interviewer's reference to

Plaintiff's "history at District 75," could refer to the lawsuits alleging age and disability

discrimination that he filed while working at District 75.  That reference is sufficient to plead direct

animus.  Accordingly, Plaintiff has sufficiently stated a claim for Fourteenth Amendment retaliation.

### C.  Plaintiff's Allegations are Insufficient to Plead Municipal Liability for Gender-Based Discrimination under Section 1983

Plaintiff does not sufficiently plead a claim for gender-based discrimination under § 1983.

Pleading gender-based discrimination under § 1983 requires the plaintiff to "(1) . . . plausibly allege

that [they] suffered an 'adverse employment action' taken 'because of' [their] sex, and (2) . . .

plausibly allege offensive conduct based on sex that was 'sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'"  *Naumovski v.*

*Norris*, 934 F.3d 200, 212 (2d Cir. 2019).  "[A] plaintiff pursuing a claim for employment

discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory

intent was a 'but-for' cause of the adverse employment action or the hostile environment."  *Id.*

The Court need not, however, determine whether Plaintiff has sufficiently pleaded a gender-

based discrimination under § 1983.  Here, Defendants have not moved to dismiss the individual

sexual harassment or hostile work environment claims against Ms. Ferguson.  *See* Mem. 2 n.3, Reply

4 n.1.  Instead, Defendants move only to dismiss Plaintiff's claims for gender discrimination pleaded

against the New York City Department of Education under a theory of *Monell* liability.  Plaintiff

does not sufficiently plead *Monell* liability.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Batista v. Rodriguez*, 702

F.2d 393, 397 (2d Cir.1983); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (same).

A plaintiff may satisfy the "policy or custom" prong in one of four ways:  by alleging the existence

of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (same).

In this case, Plaintiff asserts that "Schulman's actions in response to Fierro's complaints of sexual harassment evidence a failure on the part of the DOE to adequately train its subordinates in the prevention of sexual harassment by Ferguson." Opp'n at 11. "The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. "To establish 'deliberate indifference,' a plaintiff must show that: [i] a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; [ii] the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;' and [3] 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Id.* at 195–96 (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992). "[A] policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Walker*, 974 F.2d at 297. "Moreover, where . . . a city has a training program, a plaintiff must—in addition— 'identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)). "A municipality's

culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Plaintiff's allegations in support of his failure to train theory are too conclusory to state a claim. Plaintiff alleges only that "inadequate training/supervision was so likely to result in the harassment and or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision" and asserts that "Schulman's completely inappropriate response to Fierro's complaints of sexual harassment can only rationally be explained by Defendant's failure to properly train and/or supervise principals." FAC ¶ 61; Opp'n at 11. These conclusory allegations are plainly insufficient. *See Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (concluding that the plaintiff had not pleaded *Monell* liability where the plaintiff "merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train); *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (determining that the plaintiff failed to plead failure to train because the plaintiff did "not plead any facts that suggest, even circumstantially, that [the defendants] failed to train or supervise NYPD officers with respect to investigating shoplifting accusations" and because the plaintiff did not "plead any facts tending to show that the alleged failure to train or supervise amounted to deliberate indifference to the constitutional rights of people who may find themselves in [plaintiff's] situation"). Thus, Plaintiff has not sufficiently pleaded municipal liability for his § 1983 gender-based discrimination claim, and that claim is dismissed.

### D.  The Court Declines to Consider Plaintiff's New York State and City Claims

The Court declines to rule on Plaintiff's NYCHRL and NYSHRL claims at this point because the Court must first determine whether those claims are time barred. The statute of limitations for NYCHRL and NYSHRL claims against the Department of Education is one year.

N.Y. Educ. Law § 3813(2-b); *see also Rettino v. New York City Dep't of Educ.*, No. 19-CV-5326 (JGK), 2021 WL 2987113, at *7 (S.D.N.Y. July 15, 2021) ("[A]ll state law claims against the DOE … are barred by the one-year statute of limitations."); *Amorosi v. South Colonie Ind. Cent. Sch. Dist.,* 9 N.Y.3d 367, 373 (2007) ("[T]he one-year limitation . . . should govern discrimination claims against a school district."). Plaintiff filed the initial complaint in this action on November 25, 2020. Dkt. No 1. The statute of limitations was tolled from March 20, 2020, to November 4, 2020 because of the Covid-19 pandemic. *See* E.O. 202.8, 202.14, 202.28, 202.67. The parties agree that any claim against the DOE that accrued before April 10, 2019, is time-barred under the statute of limitations. *See* Mem. at 23; Opp'n 11-12. The majority of Plaintiff's allegations concern events that occurred prior to April 10, 2019.

In addition, under N.Y. Education Law ("NYEL") § 3813(1), no action "for any cause whatever . . . shall be prosecuted or maintained against any school district [or] board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months after the accrual of such claim." NYEL § 3813(1). "[T]he filing of a notice of claim within three months after the accrual of a claim [is] an absolute condition precedent to the filing of a lawsuit." *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006). This requirement "applies to employment discrimination claims against school districts and their officers under the NYSHRL and NYCHRL." *U.S. v. N.Y.C. Dep't of Educ.*, No. 16-cv-4291, 2017 WL 435940, at *6 (S.D.N.Y. Jan. 31, 2017); *see also Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (ninety-day notice of claim requirements apply to state law claims causes of action "sounding in discrimination, retaliation, and defamation"); *Garrido v. N.Y.C. Dep't of Educ.*, No. 16-CV-9464 (DAB), 2018 WL 1664793, at

*7–8 (S.D.N.Y. Mar. 15, 2018) (notice of claim requirement applies to employment discrimination claims against school districts and their officers under the NYSHRL and NYCHRL).

Defendants argue that Plaintiff failed to satisfy the requisite 90-day notice requirements for his NYCHRL and NYSHRL claims.[5]  They attach to their motion two notices of claim filed by Plaintiff, one on February 19, 2019, and a second on June 9, 2020.  *See* Mem. at 22-23; Dkt. No. 26. If the Court were to consider those notices, any claims that accrued prior to November 21, 2018, and between February 20, 2019 and March 11, 2020 would appear to be time barred.  Thus, combining the periods of time under which claims are barred due to the one-year statute of limitations and the notice requirement, any causes of action that accrued prior to March 11, 2020 would be time barred.  Plaintiff does not allege any conduct occurring after March 11, 2020.

However, the Court may not consider the notices of claim in deciding Defendants' motion to dismiss.  When considering a motion to dismiss, courts may "consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

Plaintiff does not reference the notices that Defendants append to their motion in his amended complaint.  Nor are the notices integral to his factual allegations—the contents of the notices have no bearing on the alleged retaliation and discrimination Plaintiff suffered.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. Nov. 19. 2021) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)) ("For a document to be considered integral to the complaint, the plaintiff must 'rel[y] on the terms and effect of a document in drafting the complaint . . . mere notice or possession is not enough.'").

---

[5] Defendants argue only that Plaintiff's "discrimination" claims are barred by the statute of limitations and notice requirements without mention of Plaintiff's retaliation claims, but the notice requirements apply to both discrimination and retaliation claims.  *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (ninety-day notice of claim requirements apply to state law claims causes of action "sounding in discrimination, *retaliation*, and defamation") (emphasis added).

As to whether the Court may take judicial notice of the notices, "[t]here is . . . disagreement among district courts in the Second Circuit as to whether . . .  notice-of-claim documents constitute public records of which courts may take judicial notice." *Bejaoui v. City of New York*, No. 13-CV-5667 NGG RML, 2015 WL 1529633, at *6 (E.D.N.Y. Mar. 31, 2015) (collecting cases).  Numerous courts have determined that a court may take judicial notice of notices of claim and consider them on a motion to dismiss where such a notice "has been filed with a court and is a matter of public record." *See, e.g.*, *Muhammad v. Schriro*, No. 13–CV–1962 PKC, 2014 WL 4652564, at *3 (S.D.N.Y. Sept.18, 2014) (noting that "[w]hen a general release has been filed with a court and is a matter of public record, a court may properly take judicial notice of it, and consider it on a motion to dismiss"); *Twine v. Four Unknown New York Police Officers*, No. 10 CIV. 6622 DAB JLC, 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12, 2012), report and recommendation adopted, No. 10 CIV. 6622 DAB JLC, 2013 WL 314447 (S.D.N.Y. Jan. 25, 2013) (taking judicial notice of publicly filed documents).  But where there is no evidence that a notice has been publicly filed, courts decline to consider such a notice, reasoning that the authenticity and accuracy of the document cannot be determined as required by Federal Rule of Evidence 201.  *See Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 499 (S.D.N.Y. 2003) (declining to consider notice documents that had not been publicly filed); *Ranta v. City of New York*, No. 14-CV-3794 SLT LB, 2015 WL 5821658, at *9 (E.D.N.Y. Sept. 30, 2015) (declining to consider documents where there was no evidence that they had been filed); *see also* Fed. R. Evid. 201 (a court may take judicial notice of a document where its authenticity can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Here, there is no indication that notices of claim were publicly filed.  While they are stamped to indicate that they were received by the New York City Office of Comptroller, they contain no indication suggesting that the documents are, in fact, authentic notices of claim, nor can the Court

determine whether the documents were made available to the public.[6]  Dkt. No. 27, at 22-23; Dkt. No. 26.  This Court therefore declines to take judicial notice of the notices of claim.

However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  In that case, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  Here, because Defendants have presented the Court with the notices of claim, the Court will convert the portion of the motion dealing with the timeliness of Plaintiff's NYCHRL and NYSHRL to a motion for summary judgment under Rule 12(d).  *See Ranta v. City of New York*, No. 14-CV-3794 SLT LB, 2015 WL 5821658, at *9 (E.D.N.Y. Sept. 30, 2015) (declining to consider notices of claim for which it could not take judicial notice, and instead converting the motion to a motion for summary judgment under Rule 12(d)).  Accordingly, the parties will be afforded 21 days from the date of this decision to submit all materials relevant to that motion.  Such materials should include briefing not to exceed seven pages in length, a Rule 56.1 statement addressing these limited issues, an affidavit, and any supporting exhibits.[7]  Should the Court determine that Plaintiff's NYSHRL and NYCHRL claims are not time-barred, it will determine whether Plaintiff's allegations are sufficient to state claims for violations of those statutes.

---

[6] It is not the case, as Defendants argue, that these notices of claim contravene Plaintiff's allegations that he filed a charge of discrimination with the EEOC "on or about May 28, 2020," FAC ¶ 4, as it is not clear from the notice Defendants attach to their motion that these notices were filed with the EEOC—the notices nowhere even reference the EEOC.  In other words, it is possible that Plaintiff submitted the notices of claim that Defendants have identified *in addition to* filing a charge of discrimination with the EEOC.

[7] Notably, Plaintiff does not appear to dispute that these are authentic notices of claim in his opposition.  If Plaintiff does not, in fact, dispute that his NYSHRL and NYCHRL claims are time-barred, he should indicate as such in his brief, and the Court will consider his NYCHRL and NYSHRL claims to be withdrawn.

### E.  The Court Similarly Declines to Determine Whether Plaintiff Has Stated an Aiding and Abetting Claim Against Ms. Ferguson

The Court similarly declines to consider Plaintiff's aiding and abetting claims against Ms. Ferguson at this juncture.  The NYSHRL makes it unlawful for any person to "aid, abet, incite, compel or coerce" any actionable discriminatory act.  N.Y. Exec. Law § 296(6).  Thus, to state a claim under § 296(6), a plaintiff must allege that a defendant "actually participated in the alleged discriminatory acts." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.2d 295, 328 (2004) (internal quotation marks and alterations omitted).  Aiding and abetting claims under the NYCHRL are analyzed under the same standard.  *Bonterre v. City of New York*, No. 18 CIV. 745 (ER), 2021 WL 4060358, at *7 (S.D.N.Y. Sept. 7, 2021).

"[A] defendant may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability." *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012).  "However, as the employee's liability necessarily hinges on that of the employer, the employer must be held liable for an individual to also be held liable under this provision."  *Id.*; *see also Ahmad v. New York City Health & Hosps. Corp.*, No. 20 CIV. 675 (PAE), 2021 WL 1225875, at *15 (S.D.N.Y. Mar. 31, 2021) ("[I]n this Circuit, where an employer is found liable for discrimination, an individual can be held liable for aiding and abetting allegedly unlawful discrimination by the employer, even where the individual's actions serve as the predicate for the employer's liability.").

Accordingly, the resolution of Plaintiff's claim that Ms. Ferguson aided and abetting the City of New York's discrimination necessarily hinge on whether Plaintiff has stated a claim against the City of New York for a primary violation under the NYSHRL and the NYCHRL.  The Court's consideration of that issue has been deferred pending resolution of the timeliness of Plaintiff's NYSHRL and NYCHRL claims.  Accordingly, the Court declines to consider Plaintiff's aiding and

abetting claims against Ms. Ferguson until it determines whether Plaintiff's NYSHRL and NYCHRL claims are time-barred.

## V.   LEAVE TO AMEND

Although Plaintiff has already amended his complaint once, Dkt. No. 7, the Court grants Plaintiffs leave to replead the dismissed claims.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party[,]" those circumstances do not apply in this case with respect to the majority of the dismissed claims. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  The Court will set a deadline for Plaintiff to file an amended complaint in its order resolving whether Plaintiff's claims under the NYSHRL and NYCHRL are timely.

## VI.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.  Specifically, Defendants' motion to dismiss is granted with regard to Plaintiff's First Amendment retaliation claim.  It is also granted with regard to Plaintiff's § 1983 discrimination claim.  However, Defendants' motion to dismiss is denied with regard to Plaintiff's Fourteenth Amendment retaliation claim.

The Clerk of Court is instructed to terminate the motion at Dkt. No. 24.

SO ORDERED.

Dated:  February 10, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge